229 A.2d 43.

JOHN A. RASTELLA *vs.* STATE OF RHODE ISLAND
DEPARTMENT OF PUBLIC WORKS.

APRIL 21, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Roberts, C. J. This is an employee's original petition for compensation for incapacity alleged to have resulted from illness due to an injury sustained in January 1952 while in the employ of the respondent. The cause is in this court on the petitioner's appeal from a final decree of the full commission, affirming a decree of the trial commissioner, in which the petition was denied and dismissed.

It appears from the record that petitioner on the night of January 22, 1952 was assisting a state highway crew in the sanding of state highways in the town of Foster. At the time of the incident the truck was standing beneath a sand hopper, so called, in the process of being refilled. The petitioner and a fellow employee had gone to the top of the hopper to loosen the sand so that it would flow freely into the truck below. While so working, petitioner fell into the hopper and became covered with sand to his chest or shoulders and remained so covered until extricated some two hours later. He was removed to a hospital, from which he was discharged after a short period of observation. The petitioner testified that about six months thereafter, in August 1952, he suffered the first of a long series of epileptic seizures which have recurred, according to the evidence, until the present time.

The petition under consideration was not filed until January 9, 1963, some eleven years after the injury had been sustained, and ten and one-half years after the first of the epileptic seizures had occurred. After a hearing, the trial commissioner entered a decree on December 24, 1964, in which he found that petitioner had not suffered any injury, had not been incapacitated by reason of an injury sustained in the course of his employment, and had failed to file his petition within two years from January 23, 1952, within two years from August 3, 1952, or within two years from September 14, 1960. The petitioner appealed to the full commission from this decree, and on June 1, 1965 a decree

was entered, affirming that of the trial commissioner denying and dismissing the petition.

The primary issue raised here is whether petitioner filed his claim for compensation within the time provided therefor in G. L. 1956, §28-35-57, as amended. That statute provides that employees' claims for compensation shall be barred unless the petition "* * * shall be filed within two (2) years after the occurrence or manifestation of the injury or incapacity * * *. The time for filing claims shall not begin to run in cases of latent or undiscovered physical or mental impairment due to injury including disease until (1) the person claiming benefits knew, or by exercise of reasonable diligence should have known, of the existence of such impairment and its [causal] relationship to his employment or (2) after disablement, whichever is later * * *."

Contending that his claim was timely filed, petitioner argues that where incapacity relates to a condition, the cause of which would not be apparent to a lay person, "* * * only expert medical testimony can determine whether there might be such a causal connection * * *." Therefore, he urges, the two-year statutory period in these cases runs from "* * * the date that competent medical opinion asserts that there is a causal connection." The petitioner's position is that it was in September 1961, after the making of the pneumoencephalogram, that Dr. Walter C. Cotter informed him for the first time that his epileptic seizures were causally related to an anoxia that accompanied his immersion in the sand hopper. It was at this time, petitioner argues, that he first had knowledge of the causal relationship between the epilepsy and his employment and that, having filed within two years of that date, he complied with the terms of the statute.

We are unable to agree that the statutory period will not begin to run until the injured employee has been informed by positive medical opinion that there is a causal connec-

tion between the condition and his employment. The legislature, in enacting this statute, was not concerned with how the relevant information was acquired but is resting the right to file a claim on the question of when the employee had knowledge of such relationship. The test is: When was his knowledge sufficient to charge him reasonably with notice of the probability of such relationship?

In *Reinhold* v. *Industrial Commission*, 253 Wis. 606, 34 N.W.2d 814, the court was interpreting a Wisconsin statute which is, for all practical purposes, identical with the one under consideration in the instant case. The Wisconsin court said: "The statute does not require absolute knowledge of this relationship but simply that the applicant know facts indicating its likelihood." That court holds that a petitioner is not chargeable with such knowledge as the statute contemplates other than on a showing that he knew, or should have known, in all the surrounding circumstances that such a relationship was probable.

The statute contemplates that the two-year period of limitation will begin to run when the injured employee has knowledge both of the existence of the condition and its causal relationship to his employment. We agree with the view of the Wisconsin court that the knowledge which will thus start the two-year period running need not be absolute, but rather such as would cause a reasonable man to believe that the condition with which he is afflicted is a probable result of the injury sustained in the course of his employment.

Ordinarily the existence of such knowledge is a question of fact to be determined by the commission. In the instant case the findings of the commission clearly imply its conclusion that petitioner possessed such a degree of knowledge as to the causal relationship at a time more than two years prior to the filing of his petition. There is, in our opinion, evidence in the record which will support such

finding. It is not disputed that the epilepsy became apparent to petitioner about six months after his immersion in the sand hopper, and it is conceded that the seizures continued at intervals over a period of years. The petitioner testified that he had consulted with several physicians for the purpose of ascertaining the cause of his epilepsy and its relationship, if any, to the incident at the sand hopper. Some of the medical witnesses testified that petitioner had told them of his belief that his condition resulted from the incident at the sand hopper but that they, after examination, were unable to concur in his assertion that the condition was so caused.

The petitioner's principal medical witness, Dr. Cotter, testified that in the month of September 1960, after examining petitioner for the first time, he had concluded that there was a probable causal relationship with petitioner's employment and that he had so informed petitioner's fiancee and his sister. He also testified that he had suggested a pneumoencephalogram for the purpose of ruling out other possible causes of the epileptic condition. It is clear the commission did not accept petitioner's story that at that time he had no knowledge that a causal relationship between the disease and his employment was probable.

This finding of the commission, resting, as it does, on legal evidence, is binding on this court on appeal, and the commission did not err in finding noncompliance with the pertinent terms of the statute. Because we take this view, it will not be necessary to consider other issues raised by the petitioner.

The appeal of the petitioner is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

Motion for leave to reargue denied.

*Raymond J. Surdut,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Charles G. Edwards,* Special Assistant Attorney General, for State.